## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

**Bryce Mabry**                                                                                    **Plaintiff**

**v.**                              **CASE NO. 3:13CV00222 JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                      **Defendant**

### <u>ORDER AFFIRMING THE COMMISSIONER</u>

Bryce Mabry seeks judicial review of the denial of his application for disability insurance

benefits (DIB) and supplemental security income (SSI). This is Mabry's second application.

Mabry last applied in 2009, and was denied in January 2010.[1] Mabry reapplied for DIB and SSI

in March 2011, with an alleged onset date of April 1, 2004.[2] The alleged onset date was amended

to January 15, 2010, at the administrative hearing.[3] Mabry last worked in March of 2011 as a

preparation cook at a bowling alley.[4] Mabry's date last insured is March 31, 2011.[5] Mabry bases

disability on panic attacks, paranoid schizophrenia, depression and anxiety.[6]

**The Commissioner's decision.** The Commissioner's ALJ determined that Mabry did not

engage in substantial gainful activity during the period from the amended alleged onset date to

the date last insured.[7] Mabry has severe impairments - schizoaffective disorder, depression and

---

[1]SSA record at pp. 34 & 166.

[2]*Id.* at pp. 131 & 137.

[3]*Id.* at p. 34.

[4]*Id.* at p. 149.

[5]*Id.* at p. 166.

[6]*Id.* at p. 159.

[7]*Id.* at p. 12.

history of panic attacks.[8] None of Mabry's severe impairments meet the Listings, and Mabry can perform the full range of work at all exertional levels, but with the following nonexertional limitations: limited to simple, routine, repetitive tasks where interpersonal contact is only incident to work performed and supervision is simple, direct and concrete.[9] The ALJ held that Mabry can perform past relevant work as a farm worker II and preparation cook.[10] Additionally, the ALJ held that Mabry can perform the positions of cleaner and office helper, positions identified by the vocational expert (VE) as available in the state and national economies.[11] Mabry's application was denied.[12]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[13] Mabry filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[14]

---

[8]*Id.*

[9]*Id.* at pp. 13-16.

[10]*Id.* at p. 24.

[11]*Id.* at p. 25.

[12]*Id.* at p. 26.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support

**Mabry's allegations.** Mabry maintains that the ALJ's denial of disability benefits should be reversed because (1) the ALJ failed to recognize Mabry's obesity as a severe impairment; (2) the ALJ erred in the credibility determination; (3) the RFC is not supported by substantial evidence; (4) the ALJ failed to include specific limitations in the hypothetical presented to the VE; and (5) Mabry's past jobs do not qualify as substantial gainful activity. The ALJ's decision is supported by substantial evidence and no legal error occurred.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[15] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the determination that Mabry is not disabled.[16]

**Severity analysis**. Mabry asks the Court to remand this case, in part, because the ALJ did not characterize his obesity as a severe impairment. This argument provides no basis for relief because step two directs a conclusion of "not disabled" if the claimant fails to prove a severe impairment such that the process weeds out claimants whose abilities to work are not significantly limited.[17] If the claimant meets his step-two burden, there can be no reversible error where the record shows the ALJ considered all of the medical evidence and all of the claimant's

_____

the conclusion that the claimant was not disabled.").

[15]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[16]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[17]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (explaining that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

impairments.

Mabry met his burden to show a severe impairment, so his application proceeded to step three. The record shows the ALJ considered all of the medical evidence and all of Mabry's impairments. The ALJ found that Mabry's obesity is nonsevere.[18] Even if Mabry's obesity is a severe impairment, no harm resulted from finding it "nonsevere" because Mabry proceeded to the third step. The ALJ did not err at step two.

**Credibility.** Mabry further asserts that the ALJ erred because the inconsistencies identified by the ALJ are not sufficient to support the credibility determination. After reviewing the record, the ALJ determined that Mabry was not credible to the extent that his statements were inconsistent with the RFC. For support the ALJ cited Mabry's daily activities and the objective medical evidence. Both, the ALJ maintains, are inconsistent with Mabry's allegations of debilitating symptoms.

An ALJ must evaluate the claimant's credibility because subjective complaints play a role in determining the claimant's ability to work.[19] To evaluate Mabry's credibility, the ALJ followed the required two-step process and considered the required factors,[20] so the dispositive question is whether substantial evidence supports the credibility evaluation. The ALJ's determination that Mabry's subjective complaints of pain and limitations were not credible to the extent that they conflict with the assigned RFC is supported by substantial evidence.

Mabry is capable of performing wide-ranging daily activities. In the Function Report,

---

[18]SSA record at p. 12.

[19]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[20]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

Mabry noted that during the day he watches television, reads books and plays video games.[21] Although Mabry maintains that he needs to be reminded to bathe, brush his teeth, shave and take his medications, he also states that he is able to care for his young son - changing his diapers, feeding him and playing with him.[22] Mabry is also able to make his own meals and wash his own laundry.[23] Mabry can drive himself and shop for groceries.[24] Although Mabry describes the impact of psychotic episodes on his daily activities, the objective medical evidence, and Mabry's testimony, reveals that he has not had a psychotic episode since 2004.[25] Mabry further testified at the hearing that he leaves the house to go to doctors appointments, to pick up and drop off his son, and to go out to dinner with his parents.[26]

The objective medical evidence also supports the ALJ's credibility determination. As the ALJ references in the decision, it appears that Mabry's medications are relatively effective in controlling his symptoms. The treatment records establish that Mabry has shown improvement. Indeed, Mabry has not had a psychotic episode since 2004.[27] He has been treated with the same antipsychotic, Geodon, since approximately 2006 with success.[28] Although Mabry continues to

---

[21]SSA record at p. 188.

[22]*Id.* at pp. 188-189.

[23]*Id.* at p. 190.

[24]*Id.* at p. 191.

[25]*Id.* at p. 57.

[26]*Id.* at p. 56.

[27]*Id.* at p. 57.

[28]*Id.* at p. 251, 255, 258, 261, 266, 268, 417-418, 459, 615, 621-622, 624 & 636.

struggle with depression and anxiety, medication is helping. In December 2009, Mabry communicated to his treating physician that medication seemed to help with a panic attack.[29] On that same day, Mabry indicated that he had not been depressed or anxious.[30] It was again noted that Mabry was not depressed or anxious in a February 2010 treatment note.[31] The note further indicated that the medication was working "pretty good."[32] In August 2010, it was noted that Mabry was making good progress and doing well with using coping skills to control anxiety.[33] Mabry stated that on some days he does not even need his medication for anxiety.[34] His symptoms of anxiety and depression improved since the last appointment.[35]

This positive language continues until around April 2011, when Mabry reported that he was experiencing increased depression, anxiety and suicidal thoughts.[36] Mabry was screened at the hospital after reporting suicidal thoughts.[37] In June 2011, however, Mabry's treating physician noted that Mabry was taking his medication as prescribed and experienced some

---

[29]*Id.* at p. 419.

[30]*Id.*

[31]*Id.* at p. 418.

[32]*Id.*

[33]*Id.* at pp. 264-265.

[34]*Id.* at p. 264.

[35]*Id.* at p. 265.

[36]*Id.* at pp. 244 & 571.

[37]*Id.* at p. 570.

decreased anxiety.[38] The physician observed that Mabry made slight progress.[39] This slight

progress continued in the remaining treatment notes.[40] The last note contained in the medical

records is from March 2012, and indicates that Mabry's anxiety is much more manageable than

it was in the past and that a recent medication change has helped him quite a bit.[41] Mabry

reported that he experienced no panic attacks since changing medications.[42] Mabry's treating

physician noted that Mabry was doing better overall and was pleased with his progress.[43] Indeed,

Mabry testified that the medications work when he takes them.[44] He specifically stated during the

hearing that the anxiety medication was helping.[45]

A reasonable mind would accept this evidence as adequate to support the ALJ's

credibility determination. The credibility determination is supported by substantial evidence.

**RFC.** Mabry argues that the RFC is not supported by substantial evidence because it is

not supported by medical evidence. Specifically, Mabry maintains that the June 2011 Mental

Diagnostic Evaluation, and Mabry's Global Assessment of Functioning (GAF) scores contradict

the RFC. As stated above, the ALJ determined that Mabry can perform the full range of work at

---

[38]*Id.* at p. 621.

[39]*Id.*

[40]*Id.* at pp. 614-616, 618-619 & 639.

[41]*Id.* at p. 639.

[42]*Id.*

[43]*Id.*

[44]*Id.* at p. 54.

[45]*Id.* at p. 62.

all exertional levels, but with the following nonexertional limitations: limited to simple, routine, repetitive tasks where interpersonal contact is only incident to work performed and supervision is simple, direct and concrete.[46] For support, the ALJ referenced Mabry's activities of daily living, clinical observations, success of prescription medications and state physician opinions.[47] As previously discussed, Mabry's activities of daily living, clinical observations noting improvement and the success of prescription medications support the ALJ's credibility determination, and therefore provide support for the RFC. The opinions of state physicians also support the RFC determination. The RFC determination is supported by substantial evidence.

In June 2011, a state physician completed a Psychiatric Review Technique, and determined that Mabry has only moderate limitations in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace.[48] The physician noted that there was no evidence of any episodes of decompensation of extended duration.[49] In conclusion, the physician noted that "Overall information supports ability to perform simple, routine, repetitive work."[50] A Mental Residual Functional Capacity Assessment was completed the same day.[51] Of the twenty mental categories assessed, the physician determined that Mabry is

---

[46]*Id.* at pp. 15-16.

[47]*Id.* at pp. 15-24.

[48]*Id.* at p. 602.

[49]*Id.*

[50]*Id.* at p. 604.

[51]*Id.* at p. 606.

moderately limited in only four.[52] In the remaining categories, Mabry is not significantly limited.[53] The physician stated that Mabry "is able to perform simple, routine, repetitive tasks in setting where interpersonal contact is incidental to work performed; supervision required is simple, direct and concrete."[54] This assessment was affirmed by a second state physician.[55]

Mabry places great emphasis on the June 2011 Mental Diagnostic Evaluation completed by a state physician.[56] While the state physician noted that Mabry "is not likely to be able to cope with typical mental demands of basic work-like tasks,"[57] he also made a number of determinations that support the RFC. The physician observed that Mabry "is able to communicate and interact in a socially adequate manner," "appears to have the capacity to communicate in an intelligible and effective manner," "appears to have the ability to attend and sustain concentration on basic tasks," "appears to have the capacity to sustain persistence in completing tasks," and "appears to have the capacity to complete work-like tasks within an acceptable timeframe."[58] Further, the physician noted that Mabry was cooperative throughout the evaluation, had a good attitude, was alert and oriented in all spheres, and appeared to be only

---

[52]*Id.* at pp. 606-607.

[53]*Id.*

[54]*Id.* at p. 608.

[55]*Id.* at p. 612.

[56]*Id.* at p. 578.

[57]*Id.* at p. 584.

[58]*Id.* at pp. 584-585.

somewhat anxious and depressed.[59] Overall, the Mental Diagnostic Evaluation supports the ALJ's RFC.

The ALJ extensively reviewed Mabry's GAF scores, and determined not to rely on them because they were not supported by the medical record.[60] This is something the ALJ is allowed to do.[61] Reviewing the evidence overall, the ALJ's decision to discount Mabry's GAF scores is supported by substantial evidence. Further, in his argument Mabry references physician observations and GAF scores from 2004. In the most recent records, Mabry's GAF scores were often in the mid-50's, demonstrating only moderate limitations.[62]

A reasonable mind would accept this evidence as adequate to support the ALJ's RFC. The RFC is supported by substantial evidence.

**Hypothetical.** Mabry maintains that the ALJ's denial of his disability benefits is not supported by substantial evidence because the ALJ failed to include Mabry's obesity and moderate limitations in concentration, persistence or pace in the hypothetical presented to the VE. During the hearing, the ALJ presented the VE with a hypothetical of an individual who has no exertional limitations, but is limited to simple, routine, repetitive tasks where interpersonal contact is incidental to work performed, and the supervision is simple, direct and concrete.[63]

---

[59]*Id.* at pp. 581-582.

[60]*Id.* at pp. 22-23.

[61]*See Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010) ("As the district court correctly observed, an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." (internal quotations omitted)).

[62]SSA record at pp. 614, 616, 619, 622-623 & 636.

[63]*Id.* at p. 65.

At step five, the burden shifts to the Commissioner to identify jobs that the claimant can perform considering his RFC, age, education and work experience. The testimony of a VE identifying jobs available to a claimant will constitute substantial evidence at this step "when it is based on a hypothetical that accounts for all of the claimant's proven impairments."[64] The hypothetical, however, "need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments."[65] The question, then, is whether substantial evidence supports the ALJ's exclusion of Mabry's obesity and limitations in concentration, persistence or pace from the hypothetical. A review of the medical records and hearing testimony reveals that the ALJ's decision to exclude these limitations from the hypothetical is supported by substantial evidence.

The medical records are voluminous. Very few, however, mention Mabry's obesity. Mabry is never limited due to his obesity. Mabry was never prescribed medication specific to obesity. Additionally, during the hearing, Mabry did not testify to limitations attributed to his obesity.

While the ALJ determined that Mabry suffers from limitations in concentration, persistence, or pace, the records reviewed above support that Mabry is capable of performing simple, routine, repetitive tasks where interpersonal contact is incidental to work performed. To support his position that the language of the hypothetical does not adequately account for his limitations, Mabry cites to *Newton v. Chater*.[66] His reliance on *Newton*, however, is misplaced.

---

[64]*Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010).

[65]*Id.* (internal quotations and citations omitted).

[66]*Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996).

In *Newton*, the hypothetical laid out by the ALJ limited the claimant to the performance of only "simple tasks."[67] The Court determined that this language did not account for someone who "often" had deficiencies in concentration, persistence or pace.[68] In contrast to *Newton*, Mabry's hypothetical limited him to simple, routine, repetitive tasks, and the ALJ in the instant case found that Mabry was only moderately limited in concentration, persistence or pace. In reaching this conclusion, the ALJ noted that the evidence established Mabry was capable of many tasks that required sufficient concentration. Further, there are additional Eighth Circuit cases that support the ALJ's hypothetical with respect to concentration, persistence or pace.[69]

A reasonable mind would accept the evidence discussed above as adequate to support the ALJ's exclusion of obesity and limitations in concentration, persistence or pace from the hypothetical. Substantial evidence supports the denial of benefits.

**Past relevant work.**  Mabry asserts that his past employment does not constitute substantial gainful activity, and therefore the ALJ erred in determining that Mabry can perform the previous positions of farm worker II and preparation cook. This argument is unpersuasive because even if an error occurred, Mabry cannot establish harm.

"To show an error was not harmless, [the claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred."[70] That is, to show harmful error, the claimant must show the ALJ may have decided the matter differently without the error.

---

[67]*Id.* at 691.

[68]*Id.* at 695.

[69]*See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001); *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997).

[70]*Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).

The claimant cannot show the ALJ may have decided the matter differently because, in addition to finding that Mabry can perform past relevant work, the ALJ identified other positions in the state and national economies that Mabry can perform with the assigned RFC. Even if it was error to determine that Mabry can perform past relevant work, his claim would still have been denied because the ALJ found he can perform other work.

      **Conclusion.** Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the court DENIES Mabry's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

      It is so ordered this 11th day of December, 2014.

_____
UNITED STATES MAGISTRATE JUDGE